IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEREMY COLEMAN,                           )
                                          )
                   Petitioner,            )        No. C 06- 2807 JSW (PR)
                                          )
        vs.                               )        ORDER DENYING PETITION
                                          )        FOR A WRIT OF HABEAS
MALFI, Warden,                            )        CORPUS
                                          )
                   Respondent.            )
_____          )

## INTRODUCTION

Petitioner, Jeremy Coleman, is a state prisoner currently incarcerated at the Sierra Conservation Center, in Jamestown, California.  On April 24, 2006, Petitioner filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging ineffective assistance of trial counsel in violation of the Sixth Amendment, and that his constitutional rights were violated by the admission of testimony regarding an unduly suggestive identification procedure.  Per order filed on October 10, 2006, the Court found that the petition, when liberally construed, stated a cognizable federal claim and ordered Respondent to show cause why a writ of habeas corpus should not be granted.  Respondent filed an answer.  Petitioner has not filed a traverse.  This *pro se* habeas petition is now before the Court for consideration on the merits.  For the reasons discussed, the petition is denied.

## PROCEDURAL BACKGROUND

On February 25, 2002, Petitioner was convicted by a jury in Contra Costa County Superior Court of second degree robbery, a violation of California Penal

Code sections 211 and 212.5, with an enhancement for the personal use of a firearm, pursuant to sections 12022.53(b) and 12025.  On March 22, 2002, Petitioner was sentenced by the trial court to 12 years in state prison.  The California Court of Appeal affirmed Petitioner's conviction on August 1, 2003, and the California Supreme Court denied review on October 15, 2003.  On July 27, 2004, the Contra Costa County Superior Court denied petitioner's habeas corpus petition.  The California Court of Appeal and California Supreme Court denied review on October 27, 2004, and March 29, 2006, respectively.  Petitioner filed the instant federal petition for a writ of habeas corpus on April 24, 2006.

## **FACTUAL BACKGROUND**

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> On March 28, 2001, about 10:30 p.m., Matthew Worthen was driving north on Longbrook Way in Pleasant Hill to a grocery store. Elissa Hemus, his girlfriend at the time, was sitting in the front passenger seat. Coleman appeared on the sidewalk, stepped in front of the car, and compelled Worthen to slam on the brakes and stop. Coleman approached Hemus's side, drew a gun, pointed it first at Worthen, then at Hemus, and tapped it on the window next to Hemus's head.

> As he spoke, Coleman's speech seemed choppy, which suggested to Worthen that Coleman was nervous. Coleman also had not seemed "real sturdy" in general to Hemus, and did not hold his gun entirely "sturdy in one position the whole time." Nonetheless, Coleman moved the gun only "a little bit" after holding it up to Hemus's head; thus, it essentially remained aimed at her head until he let Worthen and Hemus go.

> Worthen turned on the dome light and gave Coleman his pocket cash, at which point Coleman saw Worthen's Fossil watch. Coleman demanded Worthen's watch as well; Worthen gave it to him.

> After asking a couple of questions, Coleman said, "This is your lucky night, get out of here," or something to that effect. As Worthen pulled away, he and Hemus saw Coleman walking north in their direction "nonchalantly" or "like nothing ever happened."

> After driving only one-tenth of a mile, Worthen and Hemus found

2

a patrol car at the next intersection. The officer and Worthen agreed that Worthen would lead the officer back to Coleman. Worthen turned the car around to drive back south on Longbrook to the scene of the robbery and saw Coleman down the street still walking in the same manner and direction as before.

A second patrol car responding to the scene passed Coleman, who ran into some bushes on the side of the street. The police apprehended Coleman immediately. During their search of Coleman the police found Worthen's Fossil watch and exactly $38 in cash, the same amount of which Worthen had been robbed. They also found a loaded gun on the ground near the place they had apprehended Coleman.

Worthen had been numb with fear throughout the robbery because it was a "traumatic" experience. He was able to recall in detail the events of the night of March 28, 2001, because it "plays back in [his] mind.... A lot." Much of this numbing, traumatizing fear stemmed from the "gun [pointing at] him."

In addition, due to Coleman's nervous tone of voice, Worthen had been afraid he would "freak [Coleman] out and Coleman would "make a nervous act and hurt somebody."

Coleman's gun had also frightened Hemus. She consciously did not try to look at Coleman's face during the robbery for fear she might "scare him or maybe cause him to pull the trigger...."

*People v. Coleman*, No. A098348, 2003 WL 21781154 (Cal. Ct. App. August 1, 2003), at *1-2.

## **STANDARD OF REVIEW**

This Court may entertain a petition for habeas relief "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* at §

3

1   2254(d).

2          "Under the 'contrary to' clause, a federal habeas court may grant the writ

3   if a state court arrives at a conclusion opposite to that reached by the Supreme

4   Court on a question of law or if the state court decides a case differently than the

5   Supreme Court has on a set of materially indistinguishable facts." *Williams v.*

6   *Taylor*, 529 U.S. 362, 412-12 (2000). "Under the 'unreasonable application'

7   clause, a federal habeas court may grant the writ if a state court identifies the

8   correct governing legal principle from the Supreme Court's decisions but

9   unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

10         Based on this deferential standard, federal habeas relief will not be

11   granted "simply because [this] court concludes in its independent judgment that

12   the relevant state-court decision applied clearly established federal law

13   erroneously or incorrectly.  Rather, that application must also be unreasonable."

14   *Id.* at 411.  While circuit law may provide persuasive authority in determining

15   whether the state court made an unreasonable application of Supreme Court

16   precedent, the only definitive source of clearly established federal law under 28

17   U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme

18   Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331

19   F.3d 1062, 1069 (9th Cir. 2003).

20         In deciding whether a state court's decision is contrary to, or an

21   unreasonable application of, clearly established federal law, a federal court looks

22   to the decision of the highest state court to address the merits of the petitioner's

23   claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th

24   Cir. 2000).  When the state court decisions do not provide a reasoned opinion, as

25   in this case, the court must "perform an 'independent review of the record' to

26   ascertain whether the state court decision was objectively unreasonable." *Himes*

27

28                                          4

*v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)).

## **DISCUSSION**

In this petition for a writ of habeas corpus, Petitioner alleges ineffective assistance of counsel based on the failure of his defense attorney to: (1) authenticate and offer into evidence a radio transmission between the police officers that were dispatched to investigate the alleged robbery, and (2) question the alleged victim about a purported 38 minute lapse that he contends was unaccounted for in the time line of events.[1]  Petitioner also alleges that his Fourteenth Amendment rights were violated by the admission of testimony regarding his identification during an unduly suggestive field show-up.

I.     **Ineffective Assistance of Counsel**

**A. Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Strickland*, 466 U.S. at 686.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, Petitioner must establish two things.  First, Petitioner must establish that counsel's performance was deficient and fell below an "objective

---

[1]Respondent has failed to respond to this aspect of Petitioner's claim in the Answer to the order to show cause.  However, this Court has resolved this claim on the merits.

5

standard of reasonableness" under prevailing professional norms.  *Strickland,* 466 U.S. at 687-88.  Second, Petitioner must establish that he was prejudiced by counsel's deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.

## B. Analysis

### 1.  Failure to Authenticate Radio Transmission

Petitioner claims that his defense counsel was ineffective for failing to authenticate and offer into evidence a radio transmission between police officers dispatched to investigate the robbery.  During a hearing, out of the presence of the jury, defense counsel moved to introduce the "dispatch tape."  Reporter's Transcript ("RT") at 459-60.  According to the parties at the hearing, portions of the tape were unintelligible and there was no transcript of the contents.  RT at 472-73.  In support of her argument that the contents of the tape constitutes admissible evidence, defense counsel argued that the tape "goes to impeach Worthen."  *Id.*  Defense counsel informed the trial court that the impeachment involved the testimony about the direction Worthen gave to Officer Thomassian that the perpetrator was walking in "[a]nd the description that he was given."  RT at 475.

The Court found that the tape could not be admitted absent proper authentication, or a stipulation regarding its admissibility.  RT at  472-73.  During the course of the argument, defense counsel informed the court that the

6

information that she sought to introduce on the dispatch tape was "exactly the same [as the] information Officer Thomassian testified to yesterday."  RT at 475.

The tape would have been introduced to impeach aspects of testimony provided by one of the victim witnesses, Matthew Worthen.  Specifically, Worthen testified that he reported to Officer Thomassian that the man who robbed him wore a blue hooded sweatshirt, and was walking northbound on Longbrook Way following the robbery.  RT at 104.  At the bench conference, Defense counsel describes the information on the tape, where apparently Officer Thomassian is heard saying that the suspect was wearing a *dark* sweatshirt and walking *southbound* on Longbrook.  RT at 479.

During defense counsel's cross examination of Worthen regarding the color of the sweatshirt, he testified "I might have said blue or black.  It was the same dark color ." RT at 150.  When pressed further by defense counsel, "[d]id you tell Officer Thomassian initially dark-colored sweatshirt, or did you give it blue or black?," Worthen answered, "I gave it honestly, I said blue or black hooded sweatshirt."  *Id.*

During cross examination of Officer Thomassian, defense counsel elicited from the witness that Worthen had told him that the perpetrator was heading southbound on Longbrook, *see* RT at 243, in contrast to Worthen's testimony that he had told Thomassian after the robbery that the perpetrator was walking northbound after the robbery, *see* RT at 151.

The trial court ruled that the defense could introduce the tape only if there was  a proper foundation could be established for it's admissibility, authentication by Officer Thomassian to identify who the information was obtained from, either through testimony or stipulation of the parties.  RT at 480. The trial court found that without such a foundation, the tape did not constitute

proper impeachment because the sources of information on the tape were unknown. RT at 480. Defense counsel did not call Officer Thomassian back to lay the proper foundation and the tape was not introduced into evidence.

Petitioner filed a state habeas corpus petition in the Contra Costa County Superior Court alleging ineffective assistance of counsel arising out of defense counsel's failure to authenticate the radio transmission. Pet. at 14. The state court denied the writ of habeas corpus without issuing a reasoned opinion regarding the claim. Pet. at 14. Because there was no reasoned decision on the merits from the state court, this court must conduct an independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Himes*, 336 F.3d at 853.

### (a) Deficient Performance

The first prong of *Strickland* requires Petitioner to show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687. The defendant must show that counsel's representation fell below an objective standard of reasonableness. *See id.* at 688. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Here, defense counsel's decision not to call back Officer Thomassian or otherwise introduce the tape does not rise to the level of deficient performance. The proffered inconsistencies between Worthen's testimony and Officer

1    Thomassian's recorded statements pertaining to whether Worthen initially stated

2    that the robber walking northbound or southbound on Longbrook Way, were

3    already presented to the jury through cross examination of Thomassian.

4    Similarly, defense counsel elicited through cross examination of Worthen that he

5    had given the description of the perpetrator's sweatshirt as "blue or black" to

6    Thomassian, instead of dark, as the taped description apparently was.  She also

7    brought out through Officer Senst that the information he received was that the

8    perpetrator was wearing a black sweatshirt.  RT at 172.

9          A difference of opinion as to trial tactics does not constitute denial of

10   effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir.

11   1981), and tactical decisions are not ineffective assistance simply because in

12   retrospect better tactics are known to have been available.  *See Bashor v. Risley*,

13   730 F.2d 1228, 1241 (9th Cir. 1984).  Tactical decisions of trial counsel deserve

14   deference when: (1) counsel in fact bases trial conduct on strategic

15   considerations; (2) counsel makes an informed decision based upon

16   investigation; and (3) the decision appears reasonable under the circumstances.

17   *See Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir. 1994).  The reasonableness

18   of counsel's decisions must be measured against the prevailing legal norms at the

19   time counsel represented the defendant.  *See Rompilla v. Beard*, 545 U.S. 374,

20   387 (2005).  Further, there is no ineffective assistance where defense counsel

21   decides not to impeach a witness over inconsequential matters.  *Allen v.

22   Woodford*, 395 F.3d 979, 999 (9th Cir. 2005).

23         It is reasonable to conclude that defense counsel did not call Officer

24   Thomassian back for strategic reasons, because it would have unnecessarily

25   consumed time and the information from the tape was already before the jury,

26   except the description of the sweatshirt as dark.  Recalling the prosecution's

27

28                                        9

witness may also have opened up additional opportunity for the prosecution to undermine the inconsistencies counsel was attempting to highlight. Counsel here was aware of the contents of the tape and argued in favor of its admission at a hearing. However, after the Court denied its admission absent further testimony from the witness, counsel did not recall Thomassian and, instead, used "exactly the same" information elicited on cross-examination in her closing arguments. Defense counsel employed the reasonable tactic of reserving uncured inconsistencies for closing arguments. RT at 544-59 (describing numerous inconsistencies from Worthen's and Officer Thomassian's testimony). Because judicial scrutiny of counsel's performance must be deferential and because there is a strong presumption that counsel's performance was reasonable, the Court concludes that counsel's performance was not deficient under the facts here.

### (b) Prejudicial Effect

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). However, here there is no indication that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The burden to prove prejudice rests with the Petitioner. *Id.* at 693.

Impeachment tactics are a matter of trial strategy. *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980). No prejudice exists where the alleged failure to impeach would have little impact on the overall trial. *United States v. Bosh*, 914 F.2d 1239, 1246 (9th Cir. 1990). As noted above, the minor discrepancies between Worthen's and Officer Thomassian's descriptions of the suspect's sweatshirt were brought out on cross-examination, except a description

on the tape of the sweatshirt as dark, rather than blue (or black, as Worthen testified on cross-examination).  It cannot be said that any further impact from the admission of the taped description of the sweatshirt as "dark" itself would have had a significant impact on the trial. Nor would the repetitive admission of the inconsistency in the direction the suspect was heading have had that effect.

The overall evidence of Petitioner's guilt was overwhelming.  Both victim witnesses identified Petitioner within minutes after the robbery at a field show-up.  Worthen identified Petitioner again three months later in a line up.  A search of Petitioner following his arrest uncovered Worthen's stolen Fossil watch and roughly the same amount of money that Worthen reported stolen to police. Lastly, a handgun matching the description given by Worthen was found on the ground near where Petitioner was arrested.

In light of the weight of the evidence supporting Petitioner's guilt and the fact that not introducing the dispatch tape was a reasonable tactical decision, Petitioner fails to meet his burden of proving an ineffective assistance of counsel claim.  Thus, the state court's decision was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Nor did the state court decision result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### 2. Failure to Cross-Examine Witness

Petitioner next claims that defense counsel was ineffective for failing to question Worthen about a purported thirty-eight minute gap in the time-line of the robbery.  Worthen testified at trial that he remembered seeing moonlight in the sky on the night of the robbery.  RT at 119.  However, according to Dr. Fraser, a defense expert, the moon on the night of the robbery went below the

horizon at 10:20 PM, meaning that it was no longer visible after that time.  RT at

312.  The police were dispatched regarding the robbery at 10:58 PM.  Therefore,

according to Petitioner, there was a thirty-eight minute period that was

unaccounted for between the robbery and the time that the victims notified the

police.  Petitioner contends that had defense counsel questioned the victim

witnesses about this time-line discrepancy, it would have proved that he could

not have committed the robbery.

     However, it is clear from the trial record that defense counsel pursued a

reasonable alternative defense theory.  The theory advanced by the defense was

based on misidentification.  During cross-examination of Worthen, defense

counsel elicited from him that the "robbery occurred at about 10:30, 10:35 in the

evening[.]" RT at 119.  Defense counsel also elicited from Worthen that it "was a

clear night.  There was enough moonlight in the sky[.]" RT at 119.  The defense

then called Dr. Fraser, who testified extensively on identification issues,

including the affect lack of moonlight would have on nighttime illumination, and

thus on a person's ability to make an accurate identification in a dark

environment.  RT 309-312.  Finally, during summation, defense counsel

vigorously argued that Worthen's confidence in his recollection was misplaced.

RT at 545-46.  Defense counsel argued that Worthen was mistaken about the

lighting conditions at the time of robbery, given Dr. Fraser's expert testimony

that the moon was not visible at the time of the robbery, which undermined

confidence in Worthen's identification of Petitioner.  RT at 545-46.

     Petitioner's claim is essentially that defense counsel should have pursued

an alternative theory to the one she pursued.  Petitioner argues essentially that

defense counsel should have accepted the truth of Worthen's assertion that there

*was* moonlight at the time of the robbery, and therefore, that the robbery must

12

have occurred before 10:20, leaving thirty-eight minutes unaccounted for in the prosecution's time-line of events. Instead, counsel used this evidence in support of her argument that Worthen was mistaken about whether there was light in the sky that night and that he could not see the perpetrator sufficiently well to make a proper identification.

However, the two theories are at odds.  Either the robbery occurred at or before 10:20 PM causing thirty-eight unaccounted minutes to elapse, or the robbery occurred later, after the moon had dropped below the horizon, in accord with the prosecution's time-line, but providing lighting conditions likely to have resulted in misidentification.  Defense counsel could only reasonably choose one of these theories for the defense.

**(a) Deficient Performance**

Petitioner fails to establish that counsel's performance fell below an objective standard of reasonableness.  In this case, the ineffectiveness Petitioner complains of relates to defense counsel's decision to use the evidence before the jury in support of the chosen theory of defense.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  *See Strickland*, 466 U.S. at 691. If counsel reviews the preliminary facts of the case and reasonably decides to pursue only one of two conflicting defense theories, for example, he need not investigate the abandoned defense theory further.  *See Williams v. Woodford*, 384 F.3d 567, 611-12 (9th Cir. 2004) (where counsel reasonably selected an alibi defense as the primary defense theory, counsel no longer had a duty to investigate a "conflicting" mental-state defense); *Turk v. White*, 116 F.3d 1264, 1266 (9th Cir. 1997) (pursuit of conflicting theories would have confused the jury and undermined defendant's

13

chance of acquittal); *Bean v. Calderon*, 163 F.3d 1073, 1082 (9th Cir. 1998) (attorney's duty to further investigate diminished capacity defense ended when he chose to present an alibi theory rather than a diminished capacity defense based largely on defendant's representations that he was not present during the crime, defendant's refusal to blame his alleged co-burglar, and defendant's refusal to adopt the diminished capacity defense).

This court applies a heavy measure of deference to defense counsel's judgment in deciding which defense theory to pursue among conflicting reasonable alternatives. *See Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002). Defense counsel in this case used the expert's testimony to establish that although the robbery took place after 10:30 PM, confidence in Worthen's was undermined by his mistake about the moonlight, contrary to scientific evidence before the jury. In support of this theory, defense counsel competently and effectively elicited testimony from Worthen regarding time and lighting conditions, presented an identification expert to refute Worthen's recollection and challenge his identification, and finally, drove the point home in closing argument. Impeachment strategies are a matter of trial strategy. *Gustave*, F.2d at 906. Judicial scrutiny of counsel's performance is highly deferential, and this Court finds that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Here, Petitioner fails to show how counsel's performance was deficient because the defense pursued one reasonable theory and not another conflicting theory.

### (b) Prejudicial Effect

Because counsel's performance was not deficient, there is no need to examine the prejudice prong of *Strickland*. *Siripongs*, 133 F.3d at 737. However, Petitioner also fails to meet his burden in proving that but for

14

counsel's performance "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The evidence in this case against Petitioner was overwhelming and counsel's decision not to question Worthen about any purported gap in the time line does not establish "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695). Petitioner has not established that there is a reasonable probability the result would have been different had counsel questioned the witnesses about the purported discrepancy in the timing of the robbery.

Therefore, the state court's decision was not contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Nor did the state court decision result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**II.     Field Show-up**

Petitioner claims that his Fourteenth Amendment rights were violated by the introduction of evidence regarding the field show-up procedure employed by the police on the night of the robbery. Within minutes after the robbery, police apprehended Petitioner who tried to escape into the bushes near the crime scene. RT at 108. The police admonished the victim witnesses that they detained someone who may or may not be the suspect, and asked if they would be willing to view that person. RT at 237, 246-47. Worthen testified about receiving this admonishment. RT at 108. The victim witnesses identified Petitioner as the robber during the single person field show-up. Petitioner argues that this technique was unduly suggestive. There is no reasoned state court opinion addressing this claim.

1  **A. Legal standard**

2    "A conviction which rests on a mistaken identification is a gross

3  miscarriage of justice."  *Stovall v. Denno*, 388 U.S. 293, 297 (1967).  Procedures

4  by which the defendant is identified as the perpetrator therefore must be

5  examined to assess whether they are unduly suggestive.  "It is the likelihood of

6  misidentification which violates a defendant's right to due process."  *Neil v.*

7  *Biggers*, 409 U.S. 188, 198 (1972).  Due process protects against the admission

8  of evidence deriving from suggestive pretrial identification procedures.  *See id.* at

9  196.  Unnecessarily suggestive pretrial identification procedures alone do not

10  require exclusion of in-court identification testimony, however; reliability is the

11  linchpin in determining the admissibility of identification testimony.  *See*

12  *Manson v. Brathwaite*, 432 U.S. 98, 100-14 (1977).  Identification testimony is

13  inadmissible as a violation of due process only if (1) a pretrial encounter is so

14  impermissibly suggestive as to give rise to a very substantial likelihood of

15  irreparable misidentification, and (2) the identification is not sufficiently reliable

16  to outweigh the corrupting effects of the suggestive procedure.  *See Van Pilon v.*

17  *Reed*, 799 F.2d 1332, 1338 (9th Cir. 1986).  A reviewing court may assume

18  suggestiveness and review reliability first.  *See id.* at 1339.

19    An identification procedure is impermissibly suggestive when it

20  emphasizes the focus upon a single individual thereby increasing the likelihood

21  of misidentification.  *See United States v. Bagley*, 772 F.2d 482, 493 (9th Cir.

22  1985); *see, e.g., United States v. Burdeau*, 168 F.3d 352, 357-58 (9th Cir. 1999)

23  (finding that photo placement, hue and facial expression were insubstantial

24  differences between defendant's photograph and the others in a photographic

25  array and did not create an impermissible suggestion that defendant was the

26  offender).

27

28                16

1    In determining whether in-court identification testimony is sufficiently

2    reliable, courts consider five factors: (1) the witness' opportunity to view the

3    defendant at the time of the incident; (2) the witness' degree of attention; (3) the

4    accuracy of the witness' prior description; (4) the level of certainty demonstrated

5    by the witness at the time of the identification procedure; and (5) the length of

6    time between the incident and the identification.  *See Manson*, 432 U.S. at 114;

7    *Neil*, 409 U.S. at 199-200.  *See, e.g., United States v. Jones*, 84 F.3d 1206,

8    1209-10 (9th Cir.) (although drive-by identification by witnesses was suggestive,

9    it was permissible because there was not a substantial likelihood of

10   misidentification), *cert. denied*, 519 U.S. 973 (1996)

11       To prevail on habeas review, a petitioner must show that the identification

12   procedures used in the case were "'so unnecessarily suggestive and conducive to

13   irreparable mistaken identification that he was denied due process of law.'"

14   *Johnson*, 63 F.3d at 929 (quoting *Stovall*, 388 U.S. at 301-02) (finding no due

15   process violation where any possible prejudice defendant may suffer from

16   unreliable identification mitigated by cross-examination and other courtroom

17   safeguards).  The ultimate question of the constitutionality of pretrial

18   identification procedures is a mixed question of law and fact.  *See Van Pilon*, 799

19   F.2d at 1336.

20   **B. Analysis**

21       In this case, the introduction of evidence regarding the field show-up did

22   not violate Petitioner's due process rights.  Each of the five reliability factors

23   announced in *Manson* is present here.  Therefore, the identification was not

24   unduly suggestive.  First, the witnesses had an opportunity to view the Petitioner

25   while he held them up at gun point.  Second, the witnesses' degree of attention

26   was heightened by the circumstances of the robbery.

27

28                                          17

> Worthen had been numb with fear throughout the robbery because it was a "traumatic" experience. He was able to recall in detail the events of the night of March 28, 2001, because it "plays back in [his] mind.... A lot." Much of this numbing, traumatizing fear stemmed from the "gun [pointing at] him."
> *Coleman*, 2003 WL 21781154 at \*2.

Third, the witnesses provided the police with an accurate description of Petitioner prior to his apprehension, accurately describing him as a male adult, about six feet tall, wearing a hooded sweatshirt, blue jeans and white shoes. RT at 242-43. These details were consistent with his appearance when he was apprehended shortly thereafter. Fourth, the record does not reflect any uncertainty regarding the identification on the part of the viewing witnesses at the time of the field show-up. And fifth, the length of time between the robbery and the identification was a mere few minutes, ensuring that the witnesses' recollections were fresh in their minds. The presence of each of these factors at the time the witnesses identified Petitioner supports the reliability of the identification. Therefore, the trial court's admission of this evidence was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate Petitioner's Fourteenth Amendment rights and the petition must be DENIED.

## CONCLUSION

The state court's denial of Petitioner's habeas petition is not contrary to or an unreasonable application of established federal law determined by the Supreme Court. Therefore, Petitioner's claims are DENIED. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: November 3, 2008

_____
JEFFREY S. WHITE
United States District Judge

18

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JEREMY COLEMAN,

             Plaintiff,

  v.

WARDEN MALF et al,

             Defendant.

_____/

Case Number: CV06-02807 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 3, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jeremy Coleman
T48866
5100 O'byrnes Ferry Rd.
Jamestown, CA 95327

Dated: November 3, 2008

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk